ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6475
    FAX: (415) 436-7234
    wendy.garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-cr-00434 TLT |
| Plaintiff, | **UNITED STATES'S SENTENCING MEMO** |
| v. | Date:  March 15, 2024 |
| VICTOR MELERO-LUNA, | Time: 9:30 a.m. |
| Defendant. | |

## I.    BACKGROUND

Defendant Victor Melero-Luna engaged in a pattern of extorting teenage girls to make pornographic images and videos of themselves and send them to him.  Once he got one image, he threatened to "expose" the girls if they did not send him more.

The charged offense relates to victim M.M., who lives in Australia.  In the summer of 2018, Melero-Luna began Snapchat conversations with M.M.  At the time, M.M. was 15 years old, and Melero-Luna knew that she was 15 years old.  A few days after they started talking, Melero-Luna sent M.M. pictures of his penis and asked her to send him naked pictures of herself.  At first M.M. resisted, but in November 2018, M.M. sent Melero-Luna around 15 sexually-explicit pictures of herself in a private Snapchat message.  In a number of the photos, M.M.'s breasts and vagina were exposed.  She also sent Melero-Luna approximately 7-8 videos of herself masturbating with her fingers.

After he received these photos and videos from M.M., Melero-Luna began of a campaign of pressuring her to send me more. Melero-Luna threatened M.M., by stating that he would send the images to her friends and family if she did not send more. M.M. blocked Melero-Luna from Snapchat in late November 2018, but he contacted her under another Snapchat account, using a new username and again told her that he would expose her if she did not send him more sexually-explicit images. M.M. blocked him again.

In March 2019, Melero-Luna again contacted M.M. multiple times, through new Snapchat usernames and through Instagram. Melero-Luna sent M.M. a collage of 5 of the photos she had sent him. They were sexually explicit and depicted M.M.'s breasts and vagina. He again threated to expose her if she did not send him more sexually-explicit images.

When M.M. did not respond, Melero-Luna contacted one of her friends through Instagram— Erica Beets, who also lives in Australia. Melero-Luna attempted to get Ms. Beets to give him M.M.'s phone number. When Ms. Beets would not give him M.M.'s number, he sent Ms. Beets a number of the sexually-explicit photos of M.M. Melero-Luna asked Ms. Beets to relay to M.M. that, if M.M. did not call him and send him more images, he would "expose" M.M. by further disseminating the sexually-explicit images and videos. Melero-Luna specifically threatened to further disseminate the sexually-explicit images and videos to M.M.'s other friends and to M.M.'s dad. When Ms. Beets protested that M.M. was 16 and at school, Melero-Luna responded by saying: "Do I give a fuck no." He then texted Ms. Beets: "Well rip to your friend. :) I'll go to jail with her ass exposed[.]"

M.M. ultimately went to the police. While she had the courage to report the sextortion she was suffering at Melero-Luna's hands, the experience has been traumatic for her. She has experienced panic attacks and anxiety as a result of Melero-Luna's blackmail. Some of these attacks have resulted in M.M. being taken to the hospital. She experiences continuous fear of being messaged and threated again. She is anxious about whether her images are being further circulated and whether they will be used against her again in the future. She has needed the assistance of Brophy Service Case Workers to help her deal with the mental distress.

Although the charged conduct relates to M.M., she was not Melero-Luna's only victim. Melero-Luna extorted pornographic images from other teenage girls by threatening to distribute their images.

These girls experienced similar distress as a result of Melero-Luna's conduct.

On November 10, 2022, Melero-Luna was charged in a single count indictment with Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b). (ECF 1.) This charge carries a five-year mandatory minimum penalty. 18 U.S.C. § 2252(a)(2) and (b). On December 1, 2023, Melero-Luna accepted responsibility for his crime and pled guilty. (ECF 40.)

## II.   SENTENCING GUIDELINES CALCULATIONS

As set forth in the PSR, the Sentencing Guidelines calculations for Melero-Luna's offense level are as follows:

a. **Base Offense Level, U.S.S.G. § 2G2.2(a)(2):**                              **22**

b. **Specific offense characteristics:**                                          **+9**

- **§ 2G2.2(b)(3)(F):  Knowingly engaged in distribution, other than distribution described in subdivisions (A)-(E)**                   **+2**
- **§2G2.2(b)(5):  Pattern of activity of sexual exploitation  +5**
- **2G2.2(b)(6):  Offense involved the use of a computer       +2**

c. **Acceptance of Responsibility § 3E1.1:**                                       **-3**

d. **Total Offense Level:**                                                         **28**

(*See* PSR ¶¶ 23-34.) The parties have not reached any agreement regarding Melero-Luna's criminal history. Probation has calculated that Melero-Luna's criminal history score is 0, and he therefore falls into Criminal History Category I. (*Id.* at ¶ 38.) The government agrees with Probation's criminal history calculations. As reflected in the PSR, the Guidelines range for imprisonment associated with total offense level 28 and Criminal History Category I is 78-97 months. (*Id.* at ¶ 60.)

## III.   GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences

1   available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to

2   avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims.  18

3   U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.  The Guidelines are "the starting point and the initial

4   benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Although the Guidelines are not binding,

5   they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita*

6   *v. United States*, 551 U.S. 338, 350 (2007).

7          The government recommends a sentence of 60 months in custody here.  This is the

8   Congressionally-mandated minimum sentence that the Court must impose for distribution of child

9   pornography.  *See* 18 U.S.C. § 2252(a)(2) and (b).  Although it is significantly less that what the

10   Sentencing Guidelines call for, the government believes 60 months is an appropriate sentence here.

11          As Congress has recognized and as the M.M.'s statement here underscores, distribution of child

12   pornography causes extensive harm to the victims.  *See Paroline v. United States*, 572 U.S. 434, 441

13   (2014) (noting that the "full extent" of the "victim's suffering is hard to grasp.").  Here, M.M. was

14   humiliated by Melero-Luna's distribution of intimate, sexual images of herself.  She lived in fear of his

15   incessant blackmail to distribute the images further, essentially to everyone she knew.  Although she

16   tried to get away from him by blocking him on social media, he hounded her relentlessly, contacting her

17   through different accounts and eventually making good on his threat to expose her to her friends.  M.M.

18   is not the only teenage girl Melero-Luna did this to—the investigation identified a number of additional

19   victims.  (PSR ¶¶ 14-15.)

20          Melero-Luna's conduct goes beyond mere possession of child pornography.  Unlike the typical

21   possessor of child pornography, Melero-Luna directly interacted with his victims and caused them

22   substantial harm through his repeated threats.  Unlike the typical possessor of child pornography,

23   Melero-Luna is the reason that pornographic pictures of these minors exist.  When confronted with the

24   distress he was causing the victims, Melero-Luna displayed shocking indifference to their welfare and

25   cared only about getting more pictures.

26          It is hard to understand why Melero-Luna did this.  He himself lives in a close-knit family and

27   was not the victim of physical, sexual, or verbal abuse.  (PSR ¶ 44.)  His motivation was not

28   economic—his basic material need have been met.  (*Id.*)  Nor does Melero-Luna suffer from any mental

1  health issues or from substance abuse.  (*Id.* at ¶¶ 49, 52.)  Melero-Luna's traumatization of these girls,

2  and M.M. in particular, is inexcusable.

3          Nevertheless, the government is recommending a below-Guildlines sentence of 60 months.

4  This is a significant sentence and accounts for the serious nature of Melero-Luna's crimes, yet it also

5  accounts for Melero's-Luna's youth, the fact that this is his first conviction, and the fact that he was just

6  a few years older than his victims.

7  **IV.      RESTITUTION**

8          The Court should order Melero-Luna to pay $3,000 in restitution to M.M., as he agreed to do in

9  the parties' plea agreement.  (ECF 40 at ¶ 10.)  M.M. was traumatized by Melero-Luna's blackmail.  She

10  has had to seek emergency hospital services to deal with the resulting panic attacks, as well as support

11  from Brophy Service Case Workers to deal with her shame, embarrassment, and fear.  (PSR ¶ 17.)

12  M.M. has been utilizing these mental health services for the past four years.

13          Under the law, $3,000 is the minimum restitution award that must be made to a victim of child

14  pornography.  "[A]n order of restitution is mandatory in the instant case, where Defendant has pled

15  guilty to trafficking in child pornography."  *United States v. Sotelo*, No. 21-CR-60016-RAR, 2022 WL

16  344588, at *2 (S.D. Fla. Feb. 4, 2022).  The Amy, Vicky, and Andy Child Pornography Victim

17  Assistance Act of 2018 (the "2018 Act"), sets a floor of $3,000 as the minimum that the Court must

18  award to each victim of child pornography tracking.  *Id.*; *see also United States v. Byrd*, 569 F. Supp. 3d

19  621, 623 (W.D. Ky. 2021) (The 2018 Act sets a floor of $3,000 for each restitution award.).  The Court

20  should order $3,000 in restitution here.

1

**V.      CONCLUSION**

2

For the foregoing reasons, the government recommends that the Court sentence Melero-Luna to

3

60 months in custody, 5 years supervised release, a $5,100 special assessment, and order Melero-Luna

4

to pay restitution to M.M. in the amount of $3,000.

5

DATED:  March 8, 2024                                              Respectfully submitted,

6

7
                                                            ISMAIL J. RAMSEY
                                                            United States Attorney

8

9
                                                            */s/ Wendy M. Garbers*

10
                                                            WENDY M. GARBERS
                                                            Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28